Which brings us to our last oral argument of the day, which is Page v. Trustees of the Mr. Ibrahim. Good afternoon, Your Honors. My name is Jeremy Gonzalez Ibrahim. I represent the appellant, Jennifer Page. In this matter, I would request that I be given leave to have about three minutes of rebuttal if necessary. Thank you. Your Honor, this matter arises before this court subsequent to a dismissal pursuant to a motion for summary judgment filed by the defendants, the appellees. The main reason or the reason given by the trial court for dismissal was that there was no evidence of a constructive discharge of Ms. Page from her employment and subsequently that the indirect evidence was insufficient to establish that there was any type of discrimination. What the appellant is clearly asking for is for this court to review that and determine that, given this particular circumstances governing the Pregnancy Discrimination Act, that the matter should be remanded and that there was sufficient evidence where for a trier of fact can make a and establish a case. And for the purposes of the appeal, Your Honors, so that it is clear, the appellant is proceeding on the Pregnancy Discrimination Act only. But didn't Ms. Page, during her deposition, really attribute the basis of this alleged harassment to her race and her gender? Your Honor, throughout the course of discovery, Ms. Page based it on essentially all three. She was on her gender, on her race, or on the situation concerning her pregnancy. For example, during her deposition, page 20 of the supplemental appendix, question, is it your belief that Sgt. Farrell screamed and yelled at you because you were a woman? Answer, yes. Why do you think you're asking to express milk caused them to discriminate against you? Answer, I honestly think that they would have done it. That was just the opportunity that they had to put stumbling blocks and make it for me to do what I needed to do for the 15 minutes I needed to do it. Question, and why were you at, why were they at to get you? Answer, I felt because I was a black woman on their police force. Question, and it didn't necessarily have anything to do with expressing milk? That was just the opportunity they used? Answer, yes. No, absolutely, Judge. I believe that Ms. Page's beliefs at the time was such that she may not be looks at the sequence of events and the timing of the events. Ms. Page was on the police force for some time. She was always black. She was always a woman. The circumstances that gave rise to her issue against the university came after she returned approximately November 5th from her family medical leave. That is when she was given permission to begin breastfeeding. So in her mind, when she's being questioned about what she believes the circumstances, she's responding honestly and truthfully that during this time period, this is what's happening to me. And it's only through the course of discovery is she able to take a step back, fortunately, pled properly in the complaint to look at the circumstances and say, well, this isn't, isn't her mind pretty important here since in part we're dealing with a subjective standard, with a standard that has a subjective component to it, especially when we get to the point of the claim that this is effectively a constructive discharge. Your Honor, it is subjective in the sense of why she would have left her employment. The question as to why the employer or supervisors of the employer conducted themselves in a certain fashion, in a certain way, I suggest, is entirely different. She has no way of knowing why they're treating her that way. She may surmise or suppose that here is why I am being treated this way. What the process of discovery allows is for her subjective beliefs, which caused and justified her resigning, to be looked at in a more objective manner to say, well, now I see this is why I was being treated this way. But the reasons why I left all come together because it's the same She may have had the wrong reason why they were discriminating against her. In other words, in terms of the ability to prove that with indirect evidence. She may have thought it's because I'm a woman or it's because I'm black, but the evidence is there. This is what they're doing to me. But because of the nature of expression of breast milk and the pricing-related condition as it applies solely to women, that in hindsight, she's able to know this is why after the process of discovery and taking of depositions and looking at the timing of the events to say, this is why I was being discriminated against. These things occurred, but it wasn't- Clearly, Counselor, clearly she wasn't discharged. This is a constructive discharge case. Yes, sir. And your burden is to show that the harassment that she had was sufficient to establish constructive discharge. What facts are out there that are sufficient to prove that she was harassed in such a way that she was in fact constructively discharged? What did they do? The facts that are out there are part of the record. They're facts that demonstrate from the bulk ends of her resignation, January 16th, dating back to when she returned to work, that in that time period, an extremely short time period, we're talking about approximately 40 days. Okay, what happened during those 40 days? During those 40 days, Your Honor, she was, in one instance, for example, when she requested permission to express breast milk at work, and that permission was granted to her. She was never denied an opportunity to do that. She was never denied permission to express breast milk. Now, substantively, whether or not activity occurred that prevented her from doing so because of the nature of the activity she was engaging in, that obviously is the claim that she is- What behavior or activity on the part of others inhibited her in any way? Your Honor, for example, to give two quick examples, all Penn police officers were accorded what was called in their nomenclature, personals, an opportunity during which time they were on duty but were permitted to take time to engage in personal activity. During her personals, where it was agreed that she would be via radio control. On another occasion- Incredibly frequent. What's the record say about the frequency of that? The record says, and again, Your Honor, I'm talking about a very short time period, so I guess it's relative when I say incredibly frequent because it's the position of the appellate. Did she testify at any time that this interrupted the process of expressing breast milk? Yes, she did, Your Honor. On a specific occasion- Did she have to stop? She was in the locker room on a personal. She had her breast pump out. Two police officers entered, one who was male, and it became they had to clean out another officer's locker. She had to re-clothe, had to put the breast pump away to allow them to clear out the locker of a police officer, and then she had to re-start. That was on one occasion. That was one occasion. That happened on one occasion. What else? Another occasion was when she called for a police car. It was common practice where- That didn't interrupt or impede, though. It did interrupt and impede, and here's why. Because in order for her to express breast milk at the station, she would have to get there at a certain period of time. We had a nurse, a lactation expert, explain for the purposes of the fact finder what is involved in the expression of breast milk. It is not an on and off switch. It has to be done at certain periods of time. There's certain periods of physiology involving a woman who is expressing breast milk when it's got to be done at a certain time with a certain amount of breast milk. After that one time that she called, there was a question. Didn't they move her back to, she was then on a foot patrol closer to headquarters? She was given a foot patrol, but then that was not the end of what had occurred with her. Even at one point, they had moved her inside the station. There was activity that it appeared that while one supervisor, specifically Sergeant Farrell, was engaging in certain types of conduct, there were other parts of the university that may have been saying, well, to address that concern, here's what we will do. When she was inside Penn, she was subjected to the type of harassment that... What? You're talking in generalities. That's what's the problem with your brief. You talk about generalities without any specifics. Well, Your Honor, I gave you two specifics concerning... All right, that's what I'm asking for is some more. Inside the police station, there was a joke where she was given a hall pass because, and that's referred to in the brief, where because Sergeant Farrell kept inquiring where she was inside of the station on such a repeated basis, one of the other supervisors said we should give her a hall pass so that she has the ability to, we know where she is or she has the permission to go to different locations. And she was going to locations for the purposes of breastfeeding. That is a specific example that's cited in the record that's in the brief that occurred while she was in the station, which one might presume is something being done by the defendant, the appellee, for her benefit, where in fact what it's doing is putting her in a location where she's subjected to different types of harassment all again within the short period of time. Let me ask you about one of the specifics you've already spoken to, and that is being denied a car to come for her personal time. In fact, you have to show how she was treated differently, and doesn't the record demonstrate that that occurred all the time to various officers based upon the availability of cars? The cars were there to patrol. They weren't there to provide transportation for somebody to exercise their personal time. And isn't there ample evidence in the record to suggest that numerous people of different, both genders, were denied cars to take them back at personal time? Your Honor, record show that or not? Yes, sir. The purpose of the court's statement absolutely is our responsibility to show that. What I would submit to the court is that is but one example when we look at the shortened period of time that Ms. Page had during which she could express breast milk. If that were the only circumstance, that she was denied by Sergeant Farrell, the same sergeant, an opportunity to come to the station using a patrol car, although it is in the record that other officers were allowed to do that. Presumably, other officers were denied that opportunity. But what I am suggesting to the court is it's a special circumstance when you're dealing with someone who has a limited time period within which to engage in a protected activity. That, unfortunately, those are the circumstances that are presented to a fact finder, and it must be those circumstances we submit to the court that the court has to look at to determine whether or not there's a material issue, a genuine issue of fact, that should be presented to a fact finder. And that there was when one looks at the entire course of events from the short 40 day time period. Why isn't your case very similar to the cases of Duffy or Close, which were cases in which our court has found that there was insufficient evidence to support constructive discharge? Your Honor, again... How can you distinguish this from those two cases? The only distinction, Judge, that I can draw in this case, and I read the depositions, was there for the vast majority of them, is when it comes to the Pregnancy Discrimination Act and this particular claim that Ms. Page is advancing, that I was discriminated against because I was expressing breast milk. That by the very nature of that activity, that that activity is going to be confined to a very short period of time. That it is not going to be a circumstance that is going to be extended out that allows Ms. Page to not take action if, for the purposes that she is engaging in the expression of breast milk, which is for the benefit of her child and what she sees as the welfare of her family. That if that were not the basis for activity, why would she remain employed? Someone reasonably situated in her same circumstances would do the exact same thing if that was their mindset given the circumstances they were facing. Let me get Judge Dowd in here. Judge Dowd? Well, I think the matter is very well briefed and it's been well argued. I have no further questions. Thank you, Mr. Ibrahim. Mr. Tucker? Ms. Brown is going to be arguing this. We changed the subject. Alright, they had you down on the list, but you spent a long morning here. I had a long morning. Ms. Brown? Yes, it is. May it please the court, Norenda Brown for the trustees of the University of Pennsylvania. As an initial matter, I want to start out by drawing the court's attention to the fact that the Pregnancy Discrimination Act does not require employers, specifically the trustees of the University of Pennsylvania here, to treat Ms. Page any differently or any better than they treat any of the other employees, the other officers on the force. Can you refer us to any case in the federal system that has afforded relief under the PDA under similar facts? That is, a denial to express breast milk? I cannot. I came from the court to Truth V. May Department Stores, which came out of the Seventh Circuit, however. In that case, the plaintiff was pregnant. She had not had her baby yet and she was experiencing severe morning sickness. Plaintiffs showed up to work repeatedly, tardy. In that case, as here, the employer made accommodations. They allowed the plaintiff to come to work at noon instead of early in the morning as she was. Plaintiff slept late and was still experiencing morning sickness when she woke up at noon. She continued to come to work tardily. She was eventually terminated from her position at May Department Stores and the court said there that employers can treat pregnant employees as bad or treat them as similarly situated, non-pregnant employees. If they don't allow tardiness from non-pregnant, similarly situated employees, they do not have to allow the pregnant employee to come tardy. Ms. Brown, you have conceded in your brief that plaintiff is a member of a protected class. That's correct. So, have you essentially conceded applicability of the PDA here? We have. What we argue, however, I would respectfully submit to the court that plaintiff does not… I'm just curious as to why you did that, given your own admission here that there is, as yet, no other case out there that would support such a claim? Well… Or are you simply confident enough in the factual record here that you don't feel a need to fight that one out? Yes, and we were conceding… I would say that we were conceding that plaintiff was… had been pregnant and was expressing breast milk, which was a pregnancy-related condition. I would submit that that was all that we intended to concede and that we felt so strongly about the fact that plaintiff could not meet her burden with respect to her constructive discharge claim that the case would not go any further. She was unable to establish her pernicious case, as I said, because she could not meet her burden with respect to constructive discharge. And here I would draw the court's attention to the fact that the burden for constructive discharge is higher even than the burden for hostile environment. And I would submit that plaintiff could not meet that severe or pervasive standard, let alone the standard that was announced by the Supreme Court in Sellers, that you have to go beyond severe or pervasive and show that the discrimination was so intolerable or particularly hostile that a reasonable person would have felt that they had to resign. In this case, the court reflects on the type of behavior or alleged discrimination that plaintiff says she was subjected to. She was asked to follow the uniform policy that she admits everyone else had to follow. She had to walk a few blocks to headquarters in order to express milk. When she complained about the walk, we reassigned her to a closer post. She complains that this, too, was discrimination. Plaintiff was asked to do light-duty tasks, and here the court should know that light-duty was a favor offered by Penn to plaintiff because she complained of having back injury. And then when she was given the light-duty task that she asked for, she complained that that was discrimination. What we have here is plaintiff taking ordinary workplace grievances and trying to distort them and somehow say that Penn discriminated against her, even though while Penn did not have to accommodate plaintiff, Penn did accommodate plaintiff. She complained to nothing that she asked us for, absent a patrol car, to be taken out of duty twice a day so that she could express milk that we did not give her. Does the fact that the period of time where an employee might be expressed breast milking is shorter, does that make a difference? I would submit respectfully that it does not. That as long as we provide the same opportunity for Ms. Page to take her personal, regardless of what she decides to do with that time, including express milk that we provide to all of the other officers, the University of Pennsylvania has done what is required of them under the Pregnancy Discrimination Act. I would also like to draw the court's attention to some of the cases where a hostile environment has not been found, let alone constructive discharge. We have cases where plaintiffs were touched inappropriately on their buttocks and their breasts. We have cases where plaintiffs were bending down and told that that position turned one of their employers on. These type of cases, which reflect much more egregious behavior or conduct than is present in this case, did not even meet the hostile environment, severe or pervasive standard. They certainly could not meet the constructive discharge standard, which requires far more, particularly hostile and intolerable. I would submit to the court that Ms. Page cannot meet her burden here if those more egregious incidents were not sufficient to go to a hostile work environment, let alone constructive discharge. Unless the court has any questions for me. Judge Downs. No questions. Thank you. Thank you, Your Honor. Thank you very much. Rebuttal, Mr. Ibrahim. Your Honor, the only rebuttal I would have really applies to the suggestion that there is no difference given the temporal nature of the application of the Pregnancy Discrimination Act and how it applies to a woman that's expressing breast milk. I cannot conceive how the intent of Congress, in terms of applying a protected class that arguably may be the only protected class that doesn't remain that way, cannot, by inference, require that the court looks at the time period within which this person or the woman can be discriminated against. It's a class, unlike disability or gender or race, that doesn't disappear. It does disappear after a certain period of time. And the question could be, is the appellant required to remain for an extended period of time and allow the discrimination or the actions that she's claiming to be evidence of discrimination to continue onward? Or should she, in keeping with what would be support for the oppressiveness of the conduct toward her, ultimately say, I'm going to make a decision and I'm going to leave because I have no choice. I'm going to leave because I need to express breast milk and this conduct is preventing me from doing so. And I would ask the court to take pause and consider that significantly as there is precious little that I was able to find, other than cases coming out of the Seventh Circuit, that addressed that particular concern having to do with the Pregnancy Discrimination Act. With that, thank you very much. Unless there are any questions for the court or Judge Dowd. I have nothing further. Thank you. Thank you, Counselor. Thank all of counsel for their helpful arguments. We'll take the case under advisement.